# THE
# MISCELLANEOUS REPORTS

OF THE

# STATE OF NEW YORK

COMMENCING APRIL, 1924.

---

MARY EMPSON, Plaintiff, v. MARK EMPSON and Others, Defendants.

Supreme Court, Erie County, April, 1924.

**Wills — construction — devise to wife of use of all real estate for ten years with provision that it should become hers at end of that period— title vested in wife at death of testator.**

Under a devise to the testator's wife of the use of all testator's real estate for ten years, " at the end of which time it shall become her own and at her disposal," the wife takes title to the real estate absolutely on the death of the testator in view of the fact that it was the evident intention of the testator to give all his property to his wife with the exception of a small bequest for the payment of the funeral expenses of his father.

ACTION for construction of a will.

*Ernest F. Kruse*, for the plaintiff.

*Bull, Roberts & Hart*, for the defendants.

EMERY, J. This is an action brought for the construction of a will. The 2d clause, which reads as follows: " She shall have the use of all my real estate for ten years, at the end of which time it shall become her own and at her disposal," is the only part of the will in question.

It is the contention of the plaintiff that the said David Empson bequeathed all of his real property to Mary Empson, his wife, and she took a fee to said property at the time of his death. Mary Empson died before the expiration of the ten years. On the other hand, it is the contention of the defendants that the clause above quoted, giving the use of the premises for ten years, was an estate for years, and the fact that she died before the expiration of the ten years failed to pass the title in her, and the said property, therefore, descends to the heirs, namely, the defendants in this case, instead of to the heirs of Mary Empson. The only question is: Did the

title to Mary Empson vest during her lifetime? In other words, did it vest during the ten-year period?

In the construction of wills, more than any other instrument, the intention of the testator should be a guide. Our courts have uniformly adopted this principle, and, therefore, in giving an interpretation of such, endeavor to carry out the intention of the testator, so far as it can be done, without violating the established rules of law. This intention (says Chancellor Kent) is the first great object of inquiry, and to this object, even technical rules are sometimes, to a certain extent, made subservient. The ascertainment of this intention is subject to well-settled rules of construction. One of these rules is that it is to be presumed that the testator intended to make a legal disposition of his estate, and such construction should be given to the language in a will as will make the will, or the limitations in it, legal and valid if it can be done in harmony with the well-settled rules, with the manifest intent, as settled by adjudicated cases, rather than such construction as will render it nugatory and illegal, even though the latter may be according to the literal and grammatical reading. *McKinstry* v. *Sanders*, 2 T. & C. 181, 190.

In the same case, Judge Potter, writing the opinion, said, at page 191: " Where the intention of the testator is in doubt, the courts will incline to favor such intent as will hold to the vesting of the estate."

At page 192 this language is used: " ' The law inclines to such a construction as will tend to vest a remainder, unless a contrary intention appears.' "

If this title did not vest until ten years after the death of the testator, then he died intestate as to his real property, providing his wife did not live ten years. If the power of alienation of this property was held in abeyance, then it would be void, because it extended the power of alienation beyond two lives in being. To ascertain the intent of the testator, let us see what would be the natural thing for him to do and what would be meant, naturally, by the language used. Here is a man who draws a will, and the only persons he mentions in his will are his father and his wife. He provides for the payment of his father's funeral expenses, which should not exceed fifty dollars. It is the most natural thing in the world for him to provide for his father's funeral expenses, but it is significant that he gives all his personal property to his wife unreservedly, excepting the fifty dollars, keeping the amount at a very moderate sum, evidently wishing to have as much left for his wife as possible. After giving her all the personal property except fifty dollars, in the 2d paragraph of his will he uses

the language above quoted.   Can it be conceived that he intended to give his wife only the use of this property for her lifetime if she did not live ten years, and then to his heirs, or did he intend to give it to her at the time of his death, with a limitation that she could not dispose of it under ten years?   Suppose his heirs had changed materially from the time of his death to the time of his wife's death.   If the defendants' construction here should be adopted, when would the property vest, what heirs would take it, those who were living at the time of his wife's death?   The vesting of title immediately is favored.   *Thomson* v. *Hill*, 87 Hun, 111; affd., 155 N. Y. 677.

When the terms of a bequest import a gift and also a direction to pay at a subsequent date, the legacy vests and will not lapse by the death of a legatee before the time of payment, but will pass to his personal representatives.   *Manice* v. *Manice*, 43 N. Y. 303, 369.

The ten years in said will, in my judgment, refer to the time at which he wished to have the right of sale and not to the time of vesting of title.

I find no cases cited by the defendants which lead me to a contrary view.   To take the defendants' view of the will would be to make a new will diametrically opposite to the express intention of the testator.   In my judgment the title to the property is vested in the widow immediately upon the death of the testator.

Let judgment enter accordingly.

Judgment accordingly.